The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATTHEW WILDMAN,

  Plaintiff,

  v.

BOSCOV'S DEPARTMENT STORE, LLC,

  Defendant.

NO. 2:26-cv-01952-JNW

**BOSCOV'S DEPARTMENT STORE, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(b)(2) AND 12(b)(6)**

Noted for Consideration: August 13, 2026

***ORAL ARGUMENT REQUESTED***

MOTION TO DISMISS
2:26-cv-01952-JNW

**FENNEMORE CRAIG, P.C.**
999 Third Avenue Suite 600
Seattle, Washington 98104
(206) 749-0500

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................... 1

II.    CERTIFICATION .......................................................................................... 3

III.    BACKGROUND ........................................................................................... 3

IV.    LEGAL STANDARD..................................................................................... 4

V.    ARGUMENT ................................................................................................. 5

    A.    The Court Lacks Personal Jurisdiction Over Boscov's. ........................................ 5

    B.    Federal Law Preempts Plaintiff's CEMA Claim. ................................................ 8

        1.    The CAN-SPAM Act broadly preempts state regulation of commercial email......................................................................................................... 8

        2.    Even under a broad reading of the savings clause, CAN-SPAM requires material falsity or deception, not mere receipt of an email.............................. 8

        3.    Wildman has not plausibly alleged material falsity or deception. ................ 10

        4.    This case is distinguishable from Ma v. Nike and Jackson v. Hanesbrands. 13

    C.    Plaintiff's Complaint Fails to State a Plausible CEMA Claim Under Rule 9(b).. 15

        1.    Wildman's claim is subject to Rule 9(b)'s heightened pleading standard.... 15

        2.    Wildman fails to plead that the subject lines were actually false when sent. 16

        3.    Wildman's serial litigation activity demonstrates he is a litigation tester who suffered no harm. ...................................................................................... 17

    D.    Plaintiff's CPA Claim Fails Because It Depends Entirely on His Failed CEMA Claim. ........................................................................................................... 18

    E.    *Brown v. Old Navy* Does Not Save Wildman's Complaint. ................................ 19

    F.    Plaintiff Fails to State a Claim Under CEMA Because He Does Not Allege Boscov's Knew Plaintiff Was a Washington Resident........................................ 21

    G.    Plaintiff Cannot Recover Statutory Damages Under CEMA. ............................ 22

    H.    Plaintiff's Claim for Treble Damages Under the Consumer Protection Act Must Be Dismissed Because Plaintiff Has Not Alleged Actual Damages.................... 23

    I.    The Damages Award Plaintiff Seeks Is Unconstitutionally Punitive. .................. 23

    J.    Dismissal Should Be With Prejudice. ................................................................ 25

VI.    CONCLUSION............................................................................................ 26

MOTION TO DISMISS - i
2:26-cv-01952-JNW

## I.    INTRODUCTION

Plaintiff Matthew Wildman is a serial litigation tester who has filed at least seven substantially identical class action lawsuits in King County Superior Court within the span of mere weeks, each through the same consortium of out-of-state law firms, each deploying the same template complaint against retailers.  His Complaint against Boscov's Department Store, LLC ("Boscov's") seeks potentially millions of dollars in statutory damages – $500 per email, per class member, trebled – for emails that the Complaint never alleges Wildman opened, read, or acted upon during the relevant promotional periods, relied upon, or was harmed by.  Despite his general claims of harm from allegedly "false" urgency messaging, the Complaint does not allege that Wildman was ever exposed to any challenged subject line while the advertised promotion was still running; that is, at any time when the supposed urgency could have influenced his behavior.  Instead, the Complaint reads as though Wildman opened the emails after the challenged sale had ended, and notably, after Wildman had already retained counsel and begun filing his wave of lawsuits.

Wildman's Complaint asserts two causes of action: (1) violation of Washington's Commercial Electronic Mail Act ("CEMA"), RCW 19.190.020, and (2) violation of the Consumer Protection Act ("CPA"), RCW 19.86.020.  Both claims fail as a matter of law and should be dismissed with prejudice.

*First*, the Court lacks personal jurisdiction over Boscov's.  Boscov's is a Pennsylvania-based retailer with no presence in Washington state beyond the marketing emails that allegedly landed in Wildman's inbox.  Wildman does not allege that Boscov's purposefully directed any activity toward Washington, and indeed, it is not plausible that Boscov's knew it was sending emails to a Washington resident.  Sending mass marketing emails to an individual who happens to reside in a particular state is insufficient to establish personal jurisdiction.

MOTION TO DISMISS - 1
2:26-cv-01952-JNW

*Second*, Wildman's CEMA claim is preempted by the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"), 15 U.S.C. § 7701, *et seq*. CAN-SPAM broadly preempts state statutes that regulate commercial email, subject only to a narrow exception for state laws prohibiting "falsity or deception."  Even under the broader reading of this exception adopted by the court in *Ma v. Nike, Inc.*, 816 F. Supp. 3d 1227 (W.D. Wash. 2026), the savings clause still requires that the challenged subject lines be materially false or deceptive in a manner that could affect consumer behavior.  Wildman's Complaint fails this threshold: he does not allege that he was ever exposed to the subject lines during any promotional period, that they were material to any purchasing decision, that he relied upon any statement, or that they affected his behavior in any way.  A claim premised on emails the Complaint never alleges the plaintiff saw or acted upon during the promotional periods does not involve "falsity and deception" within the meaning of CAN-SPAM's savings clause.

*Third*, even if Wildman's claim could survive preemption, his Complaint fails to state a plausible CEMA claim under the pleading standards of Federal Rules of Civil Procedure 8 and 9(b).  Wildman does not allege that he opened, read, or relied upon any of the challenged subject lines.  He does not allege any actual injury or change in behavior resulting from the emails.  His theory of "false urgency" is speculative because he fails to allege with particularity why each challenged subject line was false at the time it was sent, as opposed to reflecting a subsequent, legitimate business decision to extend a promotion.

*Fourth*, Wildman fails to state a claim under CEMA because he does not allege that Boscov's knew or had reason to know that his email address was held by a Washington resident, as CEMA requires.

*Fifth*, Wildman's CPA claim is entirely derivative of his CEMA claim and fails for the same reasons.  Moreover, only economic losses count as injuries to "business or property" under the CPA.  Wildman has alleged no objective economic loss.

MOTION TO DISMISS - 2
2:26-cv-01952-JNW

**FENNEMORE CRAIG, P.C.**
999 Third Avenue Suite 600
Seattle, Washington 98104
(206) 749-0500

*Sixth*, Wildman cannot recover statutory damages under CEMA, his claim for treble damages under the CPA must be dismissed because only actual damages may be trebled, and the aggregate damages award he seeks is unconstitutionally punitive under the Due Process Clause.

This Court should dismiss the Complaint with prejudice.

## II.    CERTIFICATION

Counsel for Boscov's certifies that the parties have complied with Rule 5.6 of this Court's Chambers Procedures – Civil.  Prior to filing this Motion, counsel for the parties met-and-conferred via telephonic conference and in good faith discussed whether this Motion could be avoided.  The parties were unable to reach agreement.

## III.    BACKGROUND

On May 1, 2026, Wildman filed this putative class action in the Superior Court of Washington for King County, alleging that Boscov's violated CEMA by sending commercial emails with subject lines that falsely represented the duration of sales and promotions.  On June 4, 2026, Boscov's removed the action to this Court pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, asserting original jurisdiction under the Class Action Fairness Act of 2005.

The Complaint alleges that Boscov's sent emails with subject lines announcing "ENDS TODAY" or "Last Day" for certain promotions, only to later extend those promotions by one or more days.  Wildman identifies six emails he allegedly "received" from Boscov's between July 2023 and February 2026, but he does so by subject line only – he attaches no copy, screenshot, or full text of any of those emails to the Complaint.

Critically, the Complaint never alleges that Wildman opened or read any of these emails during the promotional periods, that he relied on any subject line, or that he took (or refrained from) any action based on the emails.  Should the Court look beyond the pleadings, Boscov's anticipates the evidence will show that the last commercial email sent to Wildman was on February 18, 2026, and that, upon information and belief, Wildman did not open or click on any

MOTION TO DISMISS - 3
2:26-cv-01952-JNW

of the emails during the promotional periods when the allegedly "false" urgency could have had any impact; the only recorded opens appear to have occurred between March 25 and April 28, 2026, after every challenged promotion had concluded, after Wildman closed his Boscov's credit card (July 24, 2024), and after he had begun filing his string of CEMA lawsuits (beginning April 21, 2026). That pattern is consistent with litigation preparation rather than genuine consumer engagement. Regardless, the dispositive point at the pleading stage is the Complaint's own silence: it does not allege that Wildman ever opened or acted upon any challenged subject line during the relevant promotional window.

Wildman is no ordinary consumer. He is a professional litigation tester who, within weeks of filing this lawsuit, filed at least six other substantially identical class action complaints in King County Superior Court against La Colombe (Case No. 26-2-13228-3, filed April 21, 2026), Hickory Farms (Case No. 26-2-15375-2, filed May 8, 2026), Lenox Corporation (Case No. 26-2-15358-2, filed May 8, 2026), CookUnity (Case No. 26-2-15588-7, filed May 11, 2026), Motorola (Case No. 26-2-16060-1, filed May 14, 2026), and Philadelphia Inquirer, LLC (Case No. 26-2-16754-1, filed May 21, 2026). Each complaint was filed by the exact same consortium of law firms – Strauss Borrelli PLLC, CohenMalad LLP, and Stranch, Jennings & Garvey, PLLC – and each deploys the same template language, legal theories, and structure. This pattern of serial litigation confirms that Wildman did not suffer any genuine harm from Boscov's emails; rather, he is a manufactured plaintiff enrolled in a litigation factory designed to extract settlements from retailers through the threat of massive statutory damages.

## IV.    LEGAL STANDARD

Upon a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of making a prima facie showing of jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "[B]are allegations" in the complaint are not sufficient to meet this prima facie showing, "[b]ut uncontroverted

MOTION TO DISMISS - 4
2:26-cv-01952-JNW

allegations must be taken as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court is not required to accept as true a "legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555).

Further, claims that are "grounded" or "sound" in fraud are subject to Rule 9(b)'s heightened pleading standard, which requires litigants to identify "the who, what, when, where, and how of the misconduct charged" and to explain "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex Rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal citation omitted).

## V.    ARGUMENT

### A.    The Court Lacks Personal Jurisdiction Over Boscov's.

The Court should dismiss Wildman's Complaint under Federal Rule of Civil Procedure 12(b)(2) because the Complaint does not allege any basis for personal jurisdiction over Boscov's in Washington. Wildman has not alleged that the Court has general jurisdiction over Boscov's. Ninth Circuit courts uniformly require that the "continuous and systematic" or "substantial" contacts with the forum state must be considerable and extensive to justify exercising general jurisdiction. *See, e.g.*, *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993) (noting that the Ninth Circuit has "regularly [] declined to find general jurisdiction

MOTION TO DISMISS - 5
2:26-cv-01952-JNW

even where the contacts were quite extensive"). Wildman alleges that Boscov's is a Delaware company with its principal address in Reading, Pennsylvania. Compl. ¶ 12. The Complaint does not allege that Boscov's maintains any offices, stores, employees, or operations in Washington. While the Complaint states in conclusory fashion that Boscov's "sells its products in Washington through its website," Compl. ¶ 10, the mere maintenance of a nationally accessible website does not establish general jurisdiction. Nothing in the Complaint supports any basis for general jurisdiction over Boscov's in Washington.

This Court also lacks specific personal jurisdiction over Boscov's. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S. Ct. 2174 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154 (1945)). The Ninth Circuit applies a three-prong test to determine whether the exercise of specific jurisdiction over a non-resident defendant comports with due process: (1) the defendant must have either purposefully directed its activities toward the forum or purposely availed itself of the privileges of conducting activities in the forum; (2) the claims must arise out of the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Schwarzenegger*, 374 F.3d at 802; *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

The Complaint does not allege that Boscov's purposefully directed any contacts to Washington. Instead, it alleges that Boscov's engaged in email marketing campaigns that happened to include the email address of an individual who lives in Washington state. Sending an email to an individual who happens to live in a state is not sufficient to establish personal jurisdiction. *See Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) ("The making of telephone calls and the sending of letters to the forum state [is] legally insufficient to enable the court to exercise personal jurisdiction over the non-resident defendant."); *Veritas Allies LLC v.*

MOTION TO DISMISS - 6
2:26-cv-01952-JNW

*Schiappacasse*, No. 3:22-cv-00903-YY, 2023 WL 6481674, at \*5 (D. Or. Oct. 5, 2023) (applying *Peterson* to texts and emails).  Indeed, even when a lawsuit arises out of the emails themselves, courts have held that mass marketing emails sent to a large number of recipients all over the United States are not sufficient to confer personal jurisdiction over the sender in any state in which a person happens to receive an email, absent any other purposeful direction of the contacts to a particular state.  *See XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 846 (10th Cir. 2020); *Jagen Invs. LLC v. Cannon Fin. Inst., Inc.*, No. 2:13-cv-00868-GMN-NJK, 2016 WL 11485896, at \*6 (D. Nev. June 27, 2016) ("[A]n untargeted marketing email is insufficient to establish that the sender was expressly aiming its conduct at the forum.").

The Tenth Circuit has explicitly held, in a case brought under CAN-SPAM, that over 10,000 mass marketing emails sent to Utah residents were insufficient to establish personal jurisdiction in that state where the defendant did not know that the email recipients resided in Utah and there was nothing in the content of the emails that was specific to Utah.  *XMission, L.C.*, 955 F.3d at 846.  As that court observed, "email addresses typically do not reveal anything about the geographic location of the addressee.  Thus, if the plaintiff does not show that the defendant otherwise knew where the recipient was located, the email itself does not demonstrate purposeful direction of the message to the forum state, even if that happens to be where the recipient lived." *Shrader v. Biddinger*, 633 F.3d 1235, 1247–48 (10th Cir. 2011).  Here, Wildman does not allege that the content of Boscov's emails had anything to do with Washington or that Boscov's knew it was directing emails to a Washington resident.

Moreover, it is unreasonable to haul a Pennsylvania-based retailer into court in Washington state simply because a Washington resident allegedly happened to be on Boscov's email marketing list.  Wildman has not alleged that Boscov's actually knew it was sending emails to Washington, only that it possibly could have known through various hypothetical means.  Such tenuous contact with the state does not rise to the level of purposeful direction and

MOTION TO DISMISS - 7
2:26-cv-01952-JNW

offends due process.  Finally, Wildman has alleged no injury in this case; thus, he cannot argue that the "effects" of Boscov's alleged wrongful conduct were felt in Washington state.  *See Calder v. Jones*, 465 U.S. 783, 787, 104 S. Ct. 1482 (1984).  This is especially true here, where Wildman is a serial litigation tester who does not allege he opened, read, or acted upon any of the challenged emails during the promotional periods.  A professional plaintiff manufacturing claims cannot credibly assert that a defendant purposefully directed deceptive conduct toward him in his home state.

**B.      Federal Law Preempts Plaintiff's CEMA Claim.**

**1.      The CAN-SPAM Act broadly preempts state regulation of commercial email.**

In 2003, Congress enacted the CAN-SPAM Act to create a uniform national standard for the regulation of commercial email.  15 U.S.C. § 7701(a)(11).  CAN-SPAM includes a sweeping preemption clause providing that the Act "supersedes any statute, regulation, or rule of a State…that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto."  15 U.S.C. § 7707(b)(1).  The Ninth Circuit has held that this language "demonstrates Congress's intent that the CAN-SPAM Act broadly preempt state regulation of commercial e-mail."  *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061 (9th Cir. 2008).  CEMA unquestionably "expressly regulates the use of electronic mail to send commercial messages" and is therefore preempted unless CAN-SPAM's narrow savings clause applies.

**2.      Even under a broad reading of the savings clause, CAN-SPAM requires material falsity or deception, not mere receipt of an email.**

Boscov's recognizes that certain courts, including the court in *Ma v. Nike, Inc.*, 816 F. Supp. 3d 1227 (W.D. Wash. 2026), have adopted a reading of CAN-SPAM's savings clause broader than the strict common-law fraud framework applied by the Fourth Circuit in *Omega*

MOTION TO DISMISS - 8
2:26-cv-01952-JNW

*World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006), and by the Ninth Circuit in *Virtumundo*, 575 F.3d at 1062-63.  In *Ma*, the court concluded that "falsity" and "deception" do not equate to common-law fraud and that reliance and damages are not strictly necessary for the savings clause to apply.  *Ma*, 816 F. Supp. 3d at 1231-32.

But even under *Ma*'s broader framework, the savings clause is not boundless.  The Ninth Circuit has consistently held that CAN-SPAM's preemption exception is "narrow" and "limited."  *Virtumundo*, 575 F.3d at 1061.  Critically, even the *Ma* court acknowledged that the CAN-SPAM Act prohibits "only *deceptive* subject line headings or *materially* false or *materially* misleading header information."  *Ma*, 816 F. Supp. 3d at 1232 (quoting *Virtumundo*, 575 F.3d at 1062) (italics in original).  In other words, even under the broader reading adopted in *Ma*, the challenged subject lines must still be materially false or deceptive.  *Virtumundo*, 575 F.3d at 1065 (only claims premised on "*material*" misstatements survive preemption) (italics in original).  The savings clause does not exempt from preemption claims based on immaterial or technical inaccuracies, nor does it exempt claims where the plaintiff was never exposed to the allegedly false information in the first place.

Moreover, the *Ma* court found preemption inapplicable because the plaintiff had "plausibly allege[d] that Nike's practice of deceptive subject-line e-mails ***misleads recipients*** as to the availability and duration of the sales promotion, ***affecting consumer behavior***."  *Ma*, 816 F. Supp. 3d at 1232 (emphasis added).  That finding – that the challenged emails "mislead[] recipients" and "affect[] consumer behavior" – was essential to the court's conclusion.  *Ma* thus did not hold that any plaintiff who merely receives an email with an allegedly misleading subject line automatically avoids preemption.  Rather, the court found preemption inapplicable because the complaint plausibly alleged that the subject lines were materially deceptive in a way that could affect consumer conduct.

MOTION TO DISMISS - 9
2:26-cv-01952-JNW

**3.     Wildman has not plausibly alleged material falsity or deception.**

Wildman's Complaint does not come close to the plausibility threshold that saved the plaintiff in *Ma*.  Where *Ma* involved allegations that the defendant's emails could "mislead[] recipients" and "affect[] consumer behavior," Wildman's Complaint conspicuously lacks any such allegation: it does not allege that Wildman opened or acted upon any of the emails during the promotional period that he challenges as creating "false time scarcity."

**No Exposure to the Allegedly False Information.**  Wildman does not allege that he ever noticed, opened, read, acted upon, or was otherwise exposed to any of the challenged subject lines during the promotional periods.  His bare allegation of having "received" the emails (*see* Compl. [Dkt. # 1-1] at ¶ 96) "is not the same as an allegation that anyone acted in reliance upon the information contained in it." *Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *4 (W.D. Wash. May 27, 2009).  To the extent the Court looks beyond the pleadings, Boscov's anticipates the evidence will show that Wildman did not open the challenged emails during the promotional periods when the subject lines could have influenced his behavior, and that the only recorded opens occurred months later – a pattern consistent with reviewing emails for litigation purposes rather than consumer decision-making.  But the pleading itself is dispositive: a subject line that the plaintiff does not allege he acted upon during the relevant promotional window cannot have "misled" him or "affected" his purchasing behavior in any cognizable sense.  Under any reading of the savings clause – whether the strict *Omega*/*Virtumundo* framework or the broader *Ma* approach – a claim premised on emails the plaintiff does not allege he acted upon or were false when sent does not involve "falsity or deception" as to that plaintiff.  It involves, at most, an abstract statutory violation untethered to any actual deceptive communication.

**No Materiality.**  Even under *Ma*, the subject lines must be "materially false or materially misleading." *Ma*, 816 F. Supp. 3d at 1232 (quoting *Virtumundo*, 575 F.3d at 1062).  Materiality

MOTION TO DISMISS - 10
2:26-cv-01952-JNW

is unquestionably required for a CEMA claim to survive preemption. *Virtumundo*, 575 F.3d at 1059 (claims based on "immaterial misstatements" are preempted); *id.* at 1065 (only claims premised on "*material*" misstatements survive preemption). Materiality resembles "a but-for standard" and "asks whether the misrepresentation 'constitut[ed] an inducement or motive' to enter into a transaction." *Kousisis v. United States*, 605 U.S. 114, 131, 145 S. Ct. 1382 (2025). A representation is material only if it is "one to which a reasonable person would attach importance when determining whether to participate in a transaction." *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1099 (W.D. Wash. 2011). Wildman cannot clear this threshold. He does not allege that any statement by Boscov's in any email subject line was material to him or to a reasonable consumer. He does not allege that he took any action at all. Absent any allegation that Wildman acted upon the challenged subject lines or even read or noticed them, he cannot plausibly show that the contents of the subject lines affected his decisions to transact with Boscov's. *See Martin v. Miller*, 24 Wn. App. 306, 309, 600 P.2d 698 (1979). The mere fact of emails sitting in an inbox cannot establish materiality. If the recipient never noticed the emails and did not make resulting purchases, it is logically impossible for the email to have been material to him and his non-existent transaction. Moreover, Wildman's "limited time" theory is particularly deficient because urgency statements like "ENDS TODAY" or "Last Day" do not concern the nature, price, or quality of the product being sold, and therefore cannot be "something of material importance." *Brummett v. Washington's Lottery*, 171 Wn. App. 664, 677-78, 288 P.3d 48 (2012) (holding that an advertisement claiming tickets were "going fast" was not material).

**No Reliance.** To state a claim that sounds in fraud or deceit and thus survives CAN-SPAM preemption, a plaintiff must also allege his own "reliance on the truth" of the misrepresentation. *M.G. v. Bainbridge Island Sch. Dist. #303*, 34 Wn. App. 2d 51, 78 n.23, 566 P.3d 132 (2025) (listing the nine elements of fraud). Reliance is required to avoid preemption.

MOTION TO DISMISS - 11
2:26-cv-01952-JNW

**FENNEMORE CRAIG, P.C.**
999 Third Avenue Suite 600
Seattle, Washington 98104
(206) 749-0500

*Virtumundo*, 575 F.3d at 1063–64 (concluding CAN-SPAM preemption applied to plaintiff's CEMA claim and noting plaintiff "admit[ted] he was not in any way misled or deceived" by defendant's promotional emails).  Wildman fails to clear this basic hurdle.  *See BP W. Coast Prods., LLC v. Shalabi*, No. C11-1341MJP, 2012 WL 2277843, at *5 (W.D. Wash. June 14, 2012) (dismissing fraud claims where plaintiff could not allege reliance element); *Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *3-4 (W.D. Wash. May 27, 2009) ("[A]n allegation that an email was received is not the same as an allegation that anyone acted in reliance upon the information contained in it.").  Wildman does not allege that he made any purchase, changed his behavior, or took any action whatsoever in reliance on any email subject line from Boscov's.  His failure to allege reliance is fatal to any claim of fraud or deception sufficient to survive CAN-SPAM preemption.

**No Allegation That the Subject Lines Were Actually False When Sent.**  Wildman does not allege that Boscov's knew any subject line was false at the time it was transmitted, or that the promotion extensions were predetermined.  The Complaint's own allegations undermine any inference of intentional deception: Boscov's decisions to extend promotions were made after the original deadline, based on business performance considerations, not as part of a preordained "scheme."  A subject line stating "ENDS TODAY" is not deceptive if, at the time it is sent, the promotion is in fact scheduled to end that day and the decision to extend it has not yet been made.

In sum, the critical distinction between this case and *Ma* is not the legal standard for preemption, it is the factual allegations.  In *Ma*, the court found plausible allegations that Nike's emails could mislead recipients and affect consumer behavior.  Here, Wildman's Complaint contains no such allegations.  His theory reduces to pure strict liability: the mere arrival of an email with a subject line later proven imprecise creates a $500 violation regardless of whether anyone was misled.  That theory falls outside the savings clause under any framework, because it

MOTION TO DISMISS - 12
2:26-cv-01952-JNW

**FENNEMORE CRAIG, P.C.**
999 Third Avenue Suite 600
Seattle, Washington 98104
(206) 749-0500

does not involve "falsity or deception" directed at any actual recipient; it involves a technical statutory violation with no deceptive impact whatsoever.  Dismissal on preemption grounds is required.

**4.      This case is distinguishable from Ma v. Nike and Jackson v. Hanesbrands.**

Wildman may point to recent decisions denying motions to dismiss in *Ma v. Nike, Inc.*, 816 F. Supp. 3d 1227 (W.D. Wash. 2026), and *Jackson v. Hanesbrands, Inc.*, No. 2:25-CV-00440-SAB, 2026 U.S. Dist. LEXIS 93444 (E.D. Wash. 2026).  Those decisions are readily distinguishable.

Boscov's acknowledges that the plaintiff in *Ma*, like Wildman, "does not allege that he read the e-mails or took any action because of the e-mails." *Ma*, 816 F. Supp. 3d at 1230.  The *Ma* court nonetheless denied the motion to dismiss, finding that the plaintiff "plausibly allege[d] that Nike's practice of deceptive subject-line e-mails misleads recipients as to the availability and duration of the sales promotion, affecting consumer behavior." *Id*. at 1232.  But the similarities between *Ma* and this case end there.  Several critical factual distinctions render *Ma* inapposite:

*First*, Wildman is a demonstrated serial litigation tester who filed seven substantially identical CEMA lawsuits in three weeks through the same counsel.  There is no indication that the plaintiff in *Ma* was anything other than an ordinary consumer.  Wildman's prolific filing pattern transforms the analysis: it provides affirmative evidence that he was not a genuine consumer who might have been "misled" by any subject line, but a professional plaintiff manufacturing claims.

*Second*, unlike *Ma*, Wildman's own pleading underscores the absence of any plausible allegation that he was exposed to the challenged subject lines during the promotional windows.  The Complaint does not allege that Wildman opened or acted upon any challenged email while a promotion was running.  And to the extent the Court considers matters beyond the pleadings,

MOTION TO DISMISS - 13
2:26-cv-01952-JNW

Boscov's anticipates the evidence will show that the only recorded opens of Wildman's emails occurred after every challenged sale had ended and after Wildman had already begun filing his string of lawsuits (beginning April 21, 2026), indicating that his engagement was *post-hoc* and litigation driven.  In *Ma*, by contrast, the complaint at least plausibly alleged that the subject lines could mislead recipients and affect consumer behavior.

*Third*, to the extent the Court considers matters beyond the pleadings, the evidence is expected to show that Wildman had effectively terminated his commercial relationship with Boscov's before many of the challenged emails were even sent – having closed his Boscov's credit card on July 24, 2024, with a total lifetime spend of approximately $500 – even though emails challenged in the Complaint were sent as late as February 2026, more than a year and a half after Wildman severed his only transactional connection to Boscov's.  A plaintiff with no active commercial relationship cannot plausibly be "misled" into making purchasing decisions by promotional subject lines from a retailer he no longer patronizes.  In *Ma*, by contrast, there was no indication that the plaintiff had terminated his relationship with Nike.

*Fourth*, the complaint in *Ma* alleged that Nike sent the emails "with the intent to later extend the advertised sales and discounts beyond their stated durations."  *Ma*, 816 F. Supp. 3d at 1229-30.  Here, the Complaint pleads no comparable facts.  To the extent the Court considers matters beyond the pleadings, the evidence is expected to show that there was no preordained scheme.  This includes Boscov's CEO's directive that campaigns cannot be extended unless it is "100% honest/accurate," as well as the absence of any formal extension policy.

Similarly, in *Jackson*, the court found the plaintiff "allege[d] sufficient facts to support her CEMA claim" and noted that "[w]hether Defendant was on notice of Plaintiff's status as a Washington resident and whether the email subject headings were false or misleading are factual issues best suited for resolution by the trier of fact."  *Jackson*, 2026 U.S. Dist. LEXIS 93444, at *5-6.  But the *Jackson* court did not address preemption, did not have affirmative evidence of the

MOTION TO DISMISS - 14
2:26-cv-01952-JNW

FENNEMORE CRAIG, P.C.
999 Third Avenue Suite 600
Seattle, Washington 98104
(206) 749-0500

plaintiff's non-engagement, and did not confront the unique circumstances present here: namely, a serial litigation tester with documented *post-hoc* email review and a terminated commercial relationship.

In sum, the distinguishing feature of this case begins with what Wildman failed to allege. The Complaint does not allege that he opened or acted upon any challenged email during the promotional periods. And to the extent the Court considers matters beyond the pleadings, the combination of (i) Wildman's serial litigation tester status, (ii) the apparent absence of email engagement during the promotional periods, (iii) email opens only during the litigation-preparation window, and (iv) a terminated commercial relationship further distinguishes this case from *Ma* and *Jackson* and demonstrates that Wildman's claims cannot survive even the most permissive reading of the savings clause.

**C.      Plaintiff's Complaint Fails to State a Plausible CEMA Claim Under Rule 9(b).**

Even if Wildman's claim could escape preemption, his Complaint fails to satisfy the applicable pleading standards.

**1.      Wildman's claim is subject to Rule 9(b)'s heightened pleading standard.**

Rule 9(b) applies whenever a plaintiff's claims are "grounded in" or "sound in" fraud, even if fraud is not a formal element of the cause of action. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Here, Wildman's Complaint is permeated with fraud-based allegations: it characterizes Boscov's marketing as a deliberate "scheme" to "deceive consumers with false information," alleges that Boscov's "knowingly" extended promotions to "perpetuate" false deadlines, and claims that Boscov's used "deceptive time-sensitivity" to manipulate consumer decision-making. These are allegations of intentional deception – not mere negligence or strict liability – and they trigger Rule 9(b)'s heightened pleading standard. *See Vess*, 317 F.3d at 1103-04; *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011). This heightened standard serves "to prohibit plaintiffs from unilaterally imposing upon the court, the

parties and society enormous social and economic costs absent some factual basis." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

**2.       Wildman fails to plead that the subject lines were actually false when sent.**

Wildman's theory depends on the premise that email subject lines stating "ENDS TODAY" or "Last Day" were "false" because the promotions were later extended.  But Wildman fails to allege with particularity that the subject lines were false at the time they were sent.  A truthful statement about the current end date of a promotion does not become retroactively false merely because the business later decides to extend it.  Wildman's Complaint acknowledges that the extensions were announced the following day, not that they were predetermined at the time the original deadline was communicated.

Indeed, the Complaint itself does not allege that any extension was predetermined, and to the extent the Court considers matters beyond the pleadings, Boscov's business practices are extended to show that promotion extensions are sometimes made when a campaign performs exceptionally well (or does not), or in response to weather or technical glitches, not pursuant to a formal strategy or policy.  Boscov's does not maintain an email marketing "policy" requiring extensions.  Multiple personnel review campaigns, and the CEO directed that campaigns cannot be extended unless the extension is "100% honest/accurate."

Wildman's blanket assertion that the subject lines are "false or misleading" does not satisfy Rule 9(b).  He must allege, for each challenged email, that the stated deadline was false at the time it was sent, *i.e.*, that Boscov's had already decided to extend the promotion before transmitting the email.  The Complaint contains no such allegation and nor can it.  The pleading's particularity problem is compounded by Wildman's failure to attach the challenged emails or to reproduce their full content: he identifies the six emails he allegedly received by subject line alone, attaching no copy, screenshot, or complete text that would allow the Court to assess the "who, what, when where, and how" that each email allegedly represented.  Court's

MOTION TO DISMISS - 16
2:26-cv-01952-JNW

applying Rule 9(b) to email-based claims require, at a minimum, that a plaintiff supply the actual emails or their full content rather than isolated subject lines.

### 3. Wildman's serial litigation activity demonstrates he is a litigation tester who suffered no harm.

The Complaint's inadequacy is further underscored by the circumstances of its filing. Wildman filed this lawsuit, along with six other virtually identical complaints, using the same counsel, the same template, and the same theory, all within a period of three weeks. (*See* Request for Judicial Notice, filed herewith, Exs. A-F.[1]) His serial litigation pattern indicates that he is a professional tester, not a harmed consumer.

Courts have recognized that litigation testers lack standing or fail to state claims because they do not suffer cognizable injury. *See Atkinson v. Aaron's LLC*, 733 F. Supp. 3d 1056, 1070-71 (W.D. Wash. 2024) (rejecting argument that "tester" plaintiffs have standing and noting "the civil rights cases reinforce that standing requires allegations of sufficient personal injury"); *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735-RGK-JC, 2025 U.S. Dist. LEXIS 70074 (C.D. Cal. Apr. 2025) (dismissing wiretapping complaint for lack of standing where plaintiff could not claim an injury "as a tester that visited and entered information into Defendant's website expecting the information to accessed" when her expectations were ultimately met); *see also Milito v. Qualtrics, LLC*, No. 25-2-18494-3 SEA, 2026 Wash. Super. LEXIS 455, at *3 (King County Superior Ct. Mar. 10, 2026) (denying motion for preliminary approval of class action settlement where plaintiff was lead plaintiff in approximately 7 cases because his "*repeated involvement raises credibility concerns and causes the Court to question whether he is acting independently or simply serving as a placeholder for counsel. Likewise the Court has*

---

[1] *Wildman v. LCT OpCo, LLC* (Case No. 26-2-13228-3, filed April 21, 2026), *Wildman v. Hickory Farms, LLC* (Case No. 26-2-15375-2, filed May 8, 2026), *Wildman v. Lenox Corp.* (Case No. 26-2-15358-2, filed May 8, 2026), *Wildman v. CookUnity, Inc.* (Case No. 26-2-15588-7, filed May 11, 2026), *Wildman v. Motorola Mobility, LLC* (Case No. 26-2-16060-1, filed May 14, 2026), *Wildman v. Philadelphia Inquirer, LLC* (Case No. 26-2-16754-1, filed May 21, 2026).

MOTION TO DISMISS - 17
2:26-cv-01952-JNW

**FENNEMORE CRAIG, P.C.**
999 Third Avenue Suite 600
Seattle, Washington 98104
(206) 749-0500

*concerns of collusion and repeat usage of Plaintiff by the same counsel directly undermines independence*.") (emphases added).  A plaintiff who signed up for emails or kept them in his inbox solely for the purpose of manufacturing a lawsuit has not been "harmed" in any meaningful sense.  Here, Wildman's total failure to open or interact with any of the challenged emails, combined with his prolific filing pattern, strongly indicates that his purported injury from consumer deception is manufactured to build a case for statutory damages.

Where, as here, the Complaint does not allege that the plaintiff opened or acted upon any of the challenged emails during the promotional periods, it fails to state a plausible claim that the plaintiff was harmed by allegedly false subject lines.  A subject line that the plaintiff does not allege he acted upon during the promotional window cannot have created any "false urgency" or manipulated any consumer decision-making.  The entire foundation of Wildman's theory collapses.

**D.    Plaintiff's CPA Claim Fails Because It Depends Entirely on His Failed CEMA Claim.**

Wildman's CPA claim is based entirely on his theory that Boscov's violated CEMA.  A violation of CEMA is a *per se* violation of the CPA.  RCW 19.190.030.  Conversely, where the CEMA claim fails, the derivative CPA claim "is likewise inadequate and [] properly dismissed." *Virtumundo*, 575 F.3d at 1065.  Because Wildman's CEMA claim is preempted and otherwise fails to state a claim, his CPA claim must also be dismissed.

Moreover, even if Wildman could state a CEMA violation, his CPA claim independently fails because he has not alleged any cognizable injury to "business or property" as required by the CPA.  "Only economic losses count as injuries to 'business or property' under the CPA— noneconomic losses, such as 'personal injury,' 'mental distress, embarrassment, and inconvenience,' do not count." *Montes v. SPARC Grp. LLC*, 6 Wn.3d 321, 324, 586 P.3d 999 (2026).  In *Montes*, the Washington Supreme Court held that a plaintiff must allege a cognizable

MOTION TO DISMISS - 18
2:26-cv-01952-JNW

CPA injury, that is, "objective economic loss," to sustain a CPA claim. *Id.* at 337-38 (allegation that purchase was made because of misrepresentation about discount price, comparative price, or price history is not sufficient for cognizable CPA injury).

Here, the Complaint contains no allegation of objective economic loss. Nor could it. Wildman's entire lawsuit is premised on his alleged passive receipt of Boscov's marketing emails. He does not allege that he made any purchase, lost any money, or suffered any economic harm whatsoever as a result of the challenged subject lines. His only alleged "injuries" are the "annoyance and harassment" of receiving marketing emails. *See* Compl. ¶ 95. But under *Montes*, such non-economic harms are insufficient to establish a cognizable injury under the CPA. This is especially true where, as here, Wildman is a serial litigation tester who does not allege he was exposed to the subject lines during the promotional periods—his injuries, if any, are manufactured through *post hoc* review of emails for litigation purposes, not through genuine consumer engagement.

Furthermore, *Montes* expressly rejected CPA claims based on allegations of false discounts where the plaintiff did not allege any objective economic harm. *See* 6 Wn.3d at 332-35. Wildman's theory—that email subject lines announcing promotional deadlines that were later extended constitute actionable "deception"—is precisely the type of pricing-practice claim that *Montes* forecloses absent actual economic injury. Wildman does not allege that he purchased anything from Boscov's at any price, let alone that he overpaid or was economically harmed. His CPA claim must be dismissed.

**E.    *Brown v. Old Navy* Does Not Save Wildman's Complaint.**

Boscov's acknowledges that in *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 567 P.3d 38 (2025), the Washington Supreme Court, in a 5-4 decision, answered a certified question from the Western District of Washington and held that RCW 19.190.020(1)(b) prohibits sending Washington residents commercial e-mails that contain "any false or misleading information in

MOTION TO DISMISS - 19
2:26-cv-01952-JNW

the subject lines of such e-mails," not merely information that disguises the commercial nature of the email. *Brown* thus broadened the scope of CEMA beyond the narrower interpretation adopted by this District in *Weimin Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082 (W.D. Wash. 2023), which had held that CEMA's subject-line provision applied only to information concealing the commercial nature of the email.

*Brown* held that "representations of fact—like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts"—are subject to CEMA's subject-line provision. *Brown*, 4 Wn.3d at 594. The underlying allegations in *Brown* – that Old Navy sent emails announcing time-limited promotions (e.g., "today only" or "three days only") that were later extended beyond the specified time limit – are factually similar to the allegations here.

But *Brown* does not answer whether any particular plaintiff has stated a plausible claim under CEMA. *Brown* addressed only the scope of information covered by the statute; it did not address preemption under CAN-SPAM, the pleading requirements applicable to CEMA claims in federal court, or whether a plaintiff who did not open any of the challenged emails during the promotional window states a viable claim. *Brown* itself was a certified question on statutory interpretation, not a ruling on the sufficiency of any complaint.

Here, even under *Brown*, the statute still requires that the subject line actually contain "false or misleading" information, which in turn requires an analysis of whether the statement was false when made, not merely that a promotion was later extended. Wildman has not adequately pled that any subject line was false at the time Boscov's sent it.

Finally, even accepting *Brown's* expansive reading, the preemption and pleading deficiencies identified in Sections V.B and V.C remain fully dispositive. *Brown* expanded what CEMA covers in state court; it did not eliminate the requirements of federal preemption law, Rule 9(b) pleading standards, or the basic requirement of plausibility under *Iqbal* and *Twombly*.

MOTION TO DISMISS - 20
2:26-cv-01952-JNW

**F.      Plaintiff Fails to State a Claim Under CEMA Because He Does Not Allege Boscov's Knew Plaintiff Was a Washington Resident.**

CEMA prohibits transmitting "a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender ***knows, or has reason to know***, is held by a Washington resident that . . . Contains false or misleading information in the subject line." RCW 19.190.020(1) (emphasis added). Wildman does not allege that Boscov's knowingly sent emails from Washington. Instead, Wildman speculates that it is "highly probable" that Boscov's, a Pennsylvania-based retailer, knew it was sending emails to Washington residents. Compl. ¶ 94. But Wildman does not support his bald allegations of "probable" knowledge with facts, and indeed they strain credulity.

Wildman relies on six speculative bases for knowledge, none of which is sufficient. First, his argument that "the sheer volume of email marketing" puts Boscov's on notice that Washington residents would receive its emails (Compl. ¶ 87) would turn CEMA into a nationwide statute covering every large, or even moderately sized, email marketer. This does not comport with the plain language of CEMA, the limitations of the United States Constitution, or basic common sense. Second, Wildman claims some consumers may have "self-report[ed]" their locations (Compl. ¶ 88), but does not allege that he did so. Third, Wildman speculates that Boscov's "may obtain location information" by tracking IP addresses (Compl. ¶ 89), but courts have cast doubt on the reliability of IP address tracking for this purpose. *See Gutierrez v. Converse Inc.*, 2024 WL 2106952, at *17 (C.D. Cal. May 2, 2024). Fourth, Wildman speculates that Boscov's "may" obtain location information from "commercial data brokers" (Compl. ¶ 91), but does not allege that Boscov's actually uses such services. Fifth, Wildman speculates about "identity resolution" services (Compl. ¶ 92), but again does not allege that Boscov's uses them. These hypothetical, speculative allegations do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

MOTION TO DISMISS - 21
2:26-cv-01952-JNW

**FENNEMORE CRAIG, P.C.**
999 Third Avenue Suite 600
Seattle, Washington 98104
(206) 749-0500

More fundamentally, Wildman's theory impermissibly inverts the statutory standard. CEMA's "reason to know" requirement presupposes that a sender possesses some affirmative basis—an identifiable fact or circumstance—from which it could infer a recipient's Washington residency. Wildman's approach turns that standard on its head: under his theory, a sender is presumed to have reason to know of Washington residency unless it can produce affirmative evidence to the contrary. This effectively creates a "reason not to know" standard, under which retailers face liability for emailing anyone who might conceivably be a Washington resident, even absent any indication that the recipient actually is one. No court has endorsed this reversal. As Congress observed in enacting CAN-SPAM, "since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply." 15 U.S.C. § 7701(a)(11). That Wildman is a serial litigation tester—*not a genuine consumer who ever interacted with Boscov's during the promotional periods*—only underscores the absurdity of requiring Boscov's to divine the geographic location of every email address on its marketing list.

**G.      Plaintiff Cannot Recover Statutory Damages Under CEMA.**

Wildman cannot recover statutory damages under CEMA. CEMA provides: "[a] person who is injured under this chapter may bring a civil action in the superior court to enjoin further violations, and to seek up to five hundred dollars per violation, or actual damages, whichever is greater." RCW 19.190.090. However, damages in a private cause of action under CEMA are available only where the defendant induced the plaintiff to provide personally identifying information, also known as phishing. RCW 19.190.090(1) ("A person who seeks damages under this subsection may only bring an action against a person or entity that directly violates RCW 19.190.080."). The Washington Supreme Court agrees. In *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 727, 406 P.3d 1149 (2017), the Court held that "[t]he plain language of chapter 19.190 RCW provides a direct cause of action with damages limited to phishing violations." Here, Wildman

MOTION TO DISMISS - 22
2:26-cv-01952-JNW

FENNEMORE CRAIG, P.C.
999 Third Avenue Suite 600
Seattle, Washington 98104
(206) 749-0500

does not assert that he was a victim of phishing or that Boscov's violated RCW 19.190.080. Accordingly, under CEMA, Wildman can only seek an injunction, not statutory damages. To the extent Wildman seeks $500 per email under his First Claim for Relief, the Court should dismiss any request for damages as unsupportable under the plain language of CEMA.

**H.      Plaintiff's Claim for Treble Damages Under the Consumer Protection Act Must Be Dismissed Because Plaintiff Has Not Alleged Actual Damages.**

Only actual damages may be trebled under the CPA. RCW 19.86.090 ("[T]he court may, in its discretion, increase the award of damages up to an amount not to exceed three times the *actual damages* sustained.") (emphasis added); *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 855, 792 P.2d 142 (1990) ("Whether an 'injury' has been sustained so as to support an award of attorneys' fees and costs under the Consumer Protection Act is a different inquiry than whether treble damages are appropriately awarded. An injury cognizable under the Act will sustain an award of attorneys' fees, while treble damages are based upon 'actual' damages awarded."); *Handlin v. On-Site Manager Inc.*, 187 Wn. App. 841, 849, 351 P.3d 226 (2015) ("The failure to show actual monetary damages only precludes the recovery of treble damages."). Here, Wildman seeks to treble statutory CEMA damages. But even if statutory damages are available for a CEMA predicate claim under the CPA, they cannot be trebled. Only actual damages may be trebled, up to $25,000. RCW 19.86.090. As Wildman has failed to allege any actual damages whatsoever, the Court should dismiss his claim for treble damages.

**I.      The Damages Award Plaintiff Seeks Is Unconstitutionally Punitive.**

The Due Process Clause "set[s] outer limits on the magnitude of damages awards." *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1120 (9th Cir. 2022). "[C]onstitutional due process concerns are heightened where, as here, statutory damages are awarded as a matter of strict liability when plaintiffs are unable to quantify any actual damages they have suffered." *Id.* In the context of class actions claiming statutory damages, aggregated awards can violate due

MOTION TO DISMISS - 23
2:26-cv-01952-JNW

process. *Id.* at 1121. The Washington Supreme Court recently acknowledged this argument in the context of a similarly punitive statute, seemingly recognizing that the constitutionality of such a damages award is questionable. *See Branson v. Wash. Fine Wine & Spirits, LLC*, 5 Wn.3d 289, 303 n.6, 574 P.3d 1031 (2025).

In determining whether a statutory damages award is disproportionately punitive, the court considers seven factors: (1) the amount of award to each plaintiff; (2) the total award; (3) the nature and persistence of the violations; (4) the extent of the defendant's culpability; (5) damage awards in similar cases; (6) the substantive or technical nature of the violations; and (7) the circumstances of each case. *Wakefield*, 51 F.4th at 1123 (quoting *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990)). Analysis of these factors demonstrates that the award Wildman seeks is disproportionately, and thus unconstitutionally, punitive.

As to factors (1), (2), and (5), taking Wildman's allegations as true, each class member would be awarded $500 for each allegedly violative email, despite sustaining zero actual damages. The Complaint alleges the class is minimally in the "thousands" (Compl. ¶ 103) and identifies multiple promotional campaigns. Even assuming a class of only 2,000 members, each receiving only the six emails specifically alleged, Wildman seeks at minimum $6 million in statutory damages on behalf of the class, before considering trebling and attorneys' fees. This is consistent with awards the Ninth Circuit has deemed unconstitutionally excessive. In *Six Mexican Workers*, the court considered $400 to $1,600 per class member excessive even though class members sustained some actual damages for underpayment of wages. 904 F.2d at 1309. Here, Wildman and the putative class allege zero actual damages, making the per-plaintiff award even more disproportionate.

As to factors (3), (4), (6), and (7), Boscov's alleged violations—even if proven—are minor and technical. Wildman asserts he received six marketing emails over a period spanning

MOTION TO DISMISS - 24
2:26-cv-01952-JNW

FENNEMORE CRAIG, P.C.
999 Third Avenue Suite 600
Seattle, Washington 98104
(206) 749-0500

2023 to 2026.  This is in no way persistent or pervasive in a manner warranting the damages sought, yet Wildman seeks thousands of dollars per class member for allegedly receiving emails that he never relied upon, much less to his detriment.  Indeed, Wildman does not allege that Boscov's offered a promotion and then failed to follow through, but rather that it offered the same or similar promotions in succession.  The culpability is minimal: Boscov's is a retailer that extended promotional pricing, not a bad actor engaged in predatory conduct.  That Wildman is a serial litigation tester who does not allege any genuine consumer harm further demonstrates the punitive and disproportionate nature of the damages sought.  Wildman's proposed application of CEMA—$500 per email, trebled to $1,500, multiplied across thousands of class members—is disproportionately punitive in light of the alleged wrongdoing and violates the Due Process Clause.

**J.      Dismissal Should Be With Prejudice.**

Because Wildman's strict-liability theory cannot survive preemption on any set of facts, because the Court lacks personal jurisdiction over Boscov's, because the Complaint does not allege that Boscov's knew Wildman was a Washington resident, and because the Complaint does not allege – and Wildman cannot plausibly allege – that he opened, acted upon, or was harmed by any of the challenged emails during the promotional periods, amendment would be futile.  *See Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996) (dismissal with prejudice is appropriate where permitting leave to amend would be futile).  Wildman cannot amend his way around the absence of any allegation that he engaged with Boscov's emails during the promotional periods or suffered any cognizable harm. This is especially true given the Ninth Circuit's holding that personal jurisdiction cannot be established by untargeted mass marketing emails, *see XMission*, 955 F.3d at 846, and the Washington Supreme Court's holding in *Montes* that failure to allege objective economic loss is fatal to a claim under the CPA, 586 P.3d at 1001.  These deficiencies are legal, not factual, and cannot be cured by amendment.

MOTION TO DISMISS - 25
2:26-cv-01952-JNW

## VI.   CONCLUSION

For the foregoing reasons, Defendant Boscov's Department Store, LLC respectfully requests that this Court grant its Motion to Dismiss and dismiss Plaintiff's Complaint in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

DATED:  July 16, 2026

**FENNEMORE CRAIG, P.C.**

By:   */s/Stephen C. Willey*
Stephen C. Willey, WSBA No. 24499
999 Third Avenue, Suite 600
Seattle, Washington 98104
Telephone: (206) 749-0500
Facsimile: (206) 749-0600
Email: swilley@fennemorelaw.com

**REED SMITH LLP**

Kya R. Coletta-Swidler (*Pro Hac Vice*)
Katherine J. Ellena (*Pro Hac Vice*)
515 South Flower Street, Suite 4300
Los Angeles, CA 90071
Telephone: (213) 457-8000
Email: kcoletta@reedsmith.com
Email: kellena@reedsmith.com

*Attorneys for Defendant Boscov's Department Store, LLC*

*I certify that this memorandum contains 8,376 words, in compliance with the Local Civil Rules.*

MOTION TO DISMISS - 26
2:26-cv-01952-JNW

**FENNEMORE CRAIG, P.C.**
999 Third Avenue Suite 600
Seattle, Washington 98104
(206) 749-0500

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 16th day of July, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.  The NEF for the foregoing specifically identifies recipients of electronic notice.

Amanda Saeteurn

CERTIFICATE OF SERVICE
2:26-cv-01952-JNW