UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MATTHEW WILDMAN,<br><br>Plaintiff,<br><br>v.<br><br>BOSCOV'S DEPARTMENT STORE LLC,<br><br>Defendant. | CASE NO. 2:26-cv-01952-JNW<br><br>REMAND ORDER |

## 1. INTRODUCTION

This matter comes before the Court on Defendant Boscov's Department Store LLC ("Boscov") motion to stay. Dkt. No. 31. But before reaching it, the Court must confirm its jurisdiction. For the reasons stated below, the Court finds it lacks subject matter jurisdiction, DENIES the motion to stay, and REMANDS the case to King County Superior Court.

## 2. BACKGROUND

Plaintiff Matthew Wildman filed this putative class action in King County Superior Court against Boscov. Dkt. No. 1-1. Boscov removed this action to this Court, asserting federal jurisdiction under the Class Action Fairness Act of 2005

("CAFA"). Dkt. No. 1 at 2. Wildman alleges that Boscov violated Washington's Commercial Electronic Mail Act ("CEMA") and Consumer Protection Act ("CPA") by sending consumers marketing emails with false or misleading subject lines. Dkt. No. 1-1 ¶¶ 110–126.

On July 16, 2026, Boscov moved to dismiss Wildman's complaint, arguing that this Court lacks personal jurisdiction over Boscov—a Pennsylvania based retailer—and that Wildman failed to state CEMA and CPA claims. Dkt. No. 19. The motion to dismiss remains pending.

On September 28, 2026, Boscov moved to stay this case until the Ninth Circuit resolves two CEMA-related appeals: *Montes v. SPARC Grp., LLC*, No. 23-35496 and *Montes v. Penney OpCo, LLC*, Nos. 25-8045, 26-241. Dkt. No. 31 at 7. On October 21, 2026, the Ninth Circuit issued a memorandum disposition in *SPARC Grp., LLC*. The *Penney OpCo, LLC* appeal is ongoing. Wildman opposes a stay, arguing that unless the Court finds Boscov has established Article III jurisdiction, the case should be remanded to state court. Dkt. No. 33 at 5. Because Article III standing is a threshold issue, the Court starts there. *Hutton v. Papa John's USA Inc.*, No. C25-1922-KKE, 2026 WL 2210133, at *1 (W.D. Wash. July 31, 2026).

## 3. DISCUSSION

### 3.1 Legal standard.

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "Among other things, that limitation

requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295–96 (2022). If a plaintiff lacks Article III standing, the Court does not have subject matter jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). The standing inquiry begins with a simple principle: "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* at 423 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"[T]he Supreme Court made clear that a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc.* (*Spokeo II*), 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins* (*Spokeo I*), 578 U.S. 330, 341 (2016) *as revised* (May 24, 2016)). To establish a concrete injury, "the plaintiff must allege a statutory violation that caused him to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Id.* (quoting *Spokeo I*, 578 U.S. at 340). Put simply, "an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 427. The key question is whether the plaintiff has identified "a close historical or common-law analogue" for the asserted injury. *Id*. at 424. Physical and monetary harms readily qualify, and so can some intangible harms, such as intrusion upon seclusion. *Id*. at 425.

"The burden of establishing removal jurisdiction, even in [CAFA] cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011). So Boscov, as the party invoking federal jurisdiction, must establish "the facts necessary to support standing with the manner and degree of evidence required at the successive stages of the litigation." *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). At the pleading stage, the Court looks to the allegations in the complaint. *See id.* at 1099 & n.2. If the Court determines, after removal, that it lacks subject matter jurisdiction, it must remand the case to state court. 28 U.S.C. § 1447(c). Remand, not dismissal, is the proper remedy. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).

**3.2 Boscov has not shown that Wildman suffered a concrete injury.**

Boscov maintains that the Court has subject-matter jurisdiction, Dkt. No. 34 at 6, but identifies no concrete injury in the Complaint. Dkt. No. 31. To the contrary, it stresses that Wildman "does not allege that he (or anyone else) *opened, read, relied upon*, or *acted on* any email" and alleges no "purchase, overpayment, or economic loss." Dkt. No. 31 at 6, 8. Wildman says he has Article III standing "for the reasons expressed in *Harbers v. Eddie Bauer,* LLC, 415 F. Supp. 3d 999 (W.D. Wash. 2019)[.]" Dkt. No. 33 at 7.

But *Harbers* was decided before *TransUnion*, and it rested on the premise that a CEMA violation is itself "the kind of concrete injury that the Washington Legislature sought to prevent." *Harbers*, 415 F. Supp. 3d at 1009. *TransUnion* holds that a legislature's "creation of a statutory prohibition or obligation and a cause of

action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." 594 U.S. at 426. As a result, the Court declines to follow *Harbers*.

Instead, the Court follows "an ever-growing list of decisions [in this District] finding that the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury." *Stutsman v. Sirius XM Radio LLC*, No. 2:25-CV-01113-LK, 2026 WL 2445129, at *4 (W.D. Wash. Aug. 20, 2026) (collecting cases). *See also Hutton*, 2026 WL 2210133, at *2 ("The Court finds that merely alleging a CEMA violation is insufficient to allege a concrete injury to [the plaintiff]."); *Aronson v. 5 Star Apparel* LLC, No. C25-2691JLR, 2026 WL 2332885, at *2 (W.D. Wash. Aug. 4, 2026) ("[E]ven if [the plaintiff] has plausibly alleged that [the defendant] violated CEMA, he cannot pursue his claim in this court because he failed to allege an Article III injury-in-fact."); *Samaduroff v. David Peyser Sportswear Inc*, No. 3:26-CV-05275-TMC, 2026 WL 2675977, at *2 (W.D. Wash. Sept. 11, 2026) ("The fact that Plaintiffs received emails allegedly in violation of CEMA does not itself constitute injury-in-fact under Article III.").

Wildman argues his Complaint is distinguishable because he did not consent or want Boscov's emails, and because consent to marketing email is largely a "fiction." Dkt. No. 33 at 8; Dkt. No. 1-1 ¶¶ 19–22. But the analogue he invokes, the Telephone Consumer Protection Act, protects the right to be free from calls and texts "absent consumer consent," because "Congress identified unsolicited contact as

a concrete harm, and gave consumers a means to redress this harm." *Harbers*, 415 F. Supp. 3d at 1008 (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)). CEMA "does not prohibit unsolicited emails." *Stutsman*, 2026 WL 2445129, at *3; *see Merrick v. Premium Brands Opco LLC*, No. 2:25-cv-02291-JNW, 2026 WL 3025764, at *2 (W.D. Wash. Oct. 8, 2026). And as Wildman alleges, its protections "do not depend on whether an email was (really or fictively) solicited." Dkt. No. 1-1 ¶ 28. So whether or not Wildman wanted Boscov's emails, he sues over their subject lines, not over unwanted contact.

As to Wildman himself, the complaint alleges that Boscov "spammed" him by sending six "deceptive commercial emails" with false or misleading subject lines. Dkt. No. 1-1 ¶¶ 95–96. But "[t]he mere 'receipt of alleged misleading or false marketing email subject lines from a solicited company,' absent any allegation of 'economic loss, detrimental reliance, or any comparable injury,' does not 'constitute a concrete harm.'" *Nuri v. True Religion Apparel*, No. 2:25-CV-00690-LK, 2026 WL 864886, at *3 (W.D. Wash. Mar. 30, 2026) (quoting *Montes*, 2025 WL 3485827, at *3). Wildman does not allege that the emails cost him time or storage, or that he bought anything, relied on them, or lost money. *See Merrick*, 2026 WL 3025764, at *2–3.

Because Boscov has not shown that the violation caused Wildman concrete harm, it has not carried its burden to establish Article III standing.

### 3.3 Remand is appropriate.

Citing other cases in this District that have stayed putative CEMA class actions, Boscov urges the Court to wait for the Ninth Circuit to resolve the "jurisdictional question" and warns "that proceeding risks inconsistent decisions and duplicative litigation." Dkt. No. 34 at 5. But, in this case, the Court does not find standing to be an open question. It reaches its conclusion based on the allegations in the Complaint, and it need not await further rulings from the Ninth Circuit. Because the Court lacks jurisdiction, it doesn't reach Wildman's arguments that the issues in the *Montes* appeals do not require the Court to await their resolution and that failing to proceed would be inequitable. Accordingly, the Court finds remand is the appropriate course. *See* 28 U.S.C. § 1447(c); *Polo*, 833 F.3d at 1196.

## 4. CONCLUSION

In sum, the Court ORDERS as follows:

1. This case is REMANDED to King County Superior Court, effective FOURTEEN (14) days from the date of this Order. *See* LCR 3(i).
2. Boscov's motion to dismiss, Dkt. No. 19, and motion to stay, Dkt. No. 31, are DENIED as moot.
3. The Clerk of Court is directed to CLOSE this case.

Dated this 28th day of October, 2026.

Jamal N. Whitehead
United States District Judge